IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| DERRICK J. PARFAIT, SR., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. G-06-341 |
| § | |
| CENAC TOWING, INC., § | |
| § | |
| Defendant, § | |
| § | |

**ORDER DENYING DEFENDANTS' OPPOSED MOTION TO TRANSFER VENUE AND
ALTERNATE MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)3**

Plaintiff Derrick J. Parfait, Sr. ("Plaintiff") brings this action against Defendant Cenac Towing, Inc. ("Defendant") for personal injuries allegedly occurring on or about November 11, 2005, while Plaintiff was working as a tankerman aboard one of Defendant's vessels, the NAN CENAC. Defendants filed their Opposed Motion to Transfer Venue to the Eastern District of Louisiana or, in the Alternative, Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3). Plaintiff filed a timely Response thereto. For the reasons stated below, Defendant's Motion is respectfully **DENIED**.[1]

### I. Background

Defendant is a Louisiana corporation, and Plaintiff is a resident of Houma, Louisiana. When Defendant hired Plaintiff, it required Plaintiff to sign a Choice of Forum Agreement as a condition of employment. The agreement prohibits Plaintiff from filing suit for personal injury against Defendant in a state or federal court outside of Louisiana. In the agreement, Plaintiff acknowledged

---

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

1

that Louisiana would not be an inconvenient forum in which to bring any potential suit against his employer for personal injuries.

Plaintiff alleges that he sustained severe and disabling injuries on or about November 11, 2005, while working aboard the NAN CENAC. Plaintiff claims that the NAN CENAC was located in federal waters off the coast of Texas at the time of his alleged injuries. The NAN CENAC's vessel logs indicate the vessel was located in Houma, Louisiana on November 11.

On the date Plaintiff was allegedly injured, Plaintiff claims he and his fellow seamen were required to egress from the NAN CENAC to a barge by jumping from a jump board. Plaintiff was the last to make the jump, and when he jumped, Plaintiff claims the barge went up and the boat went down, causing him to strike the deck of the barge. Plaintiff alleges that Defendant did not provide safety lines, which may have protected him during his jump to the barge.

## II. Forum Selection Clause

*A. Legal Standard*

This Court extensively discussed the applicability of forum-selection clauses to Jones Act seamen in *Boutte v. Cenac Towing, Inc.*, 346 F. Supp. 2d 922 (S.D. Tex. 2004). Forum selection clauses in maritime contracts are presumptively enforceable. *See M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 1913, 32 L. Ed. 2d 513 (1972) ("[Forum selection] clauses are prima facie valid and should be enforced . . . ."); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F. 3d 216 (5th Cir. 1998) ("We find . . . that the forum selection clauses in the seamen's contracts are enforceable."). However, a choice of forum agreement may be set aside "if enforcement would contravene a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 15, 92 S. Ct. at 1916.

In *Boutte*, this Court held that "choice of forum agreements in employment contracts between American seaman and American companies are unenforcable in Jones Act claims." *Boutte*, 346 F. Supp. 2d at 932. The Jones Act provides a cause of action for "[a]ny seaman who shall suffer personal injury in the course of his employment . . . ." 4 U.S.C. § 688 (2000). The Jones Act provides rights to seamen by "extend[ing] to them the same rights granted to railway employees under the Federal Employers' Liability Act." *Cox v. Ruth*, 348 U.S. 207, 208, 75 S. Ct. 242, 243, 99 L. Ed. 260 (1955); *see also* Federal Employers' Liability Act, 45 U.S.C. §§ 51–60. In *Kernan v. Am. Dredging Co.*, the Supreme Court held that the Jones Act incorporates the Federal Employers' Liability Act's (FELA) "entire judicially developed doctrine of liability . . . ." 355 U.S. 426, 439, 78 S. Ct. 394, 401, 2 L. Ed. 2d 382 (1958). Part of that doctrine involves forum selection clauses. In *Boyd v. Grand Trunk Western R. Co.*, the Supreme Court held that forum selection clauses are unenforceable in FELA claims. 338 U.S. 263, 266, 70 S. Ct. 26, 28, 94 L. Ed. 55 (1949). Therefore, as this Court held in *Boutte*, such clauses are also unenforceable in Jones Act claims involving American seamen and American companies. *Boutte*, 346 F. Supp. 2d at 932.

*B. Analysis*

Defendant urges the Court to reconsider its decision in *Boutte*, contending that (1) there is a trend in the Fifth Circuit to uphold forum selection clauses; and (2) the Louisiana statute that the Court cited in *Boutte* as indicating a strong public policy against upholding such clauses has been deemed to be "procedural in nature" by the Louisiana Supreme Court. The Court addresses each argument in turn.

Defendant insists there is a "general trend in the Fifth Circuit to uphold forum selection clauses in seamen's employment contracts." (Def.'s Mem. 20). In support of this "trend," Defendant

3

cites two Fifth Circuit cases from 1998, one of which is *Marinechance Shipping, Ltd. v. Sebastian*, which this Court discussed in detail in the *Boutte* decision. *See Boutte*, 346 F. Supp. 2d at 927–932. Defendant additionally cites two district court decisions, one from 1993 and one from 1999. *Boutte* was decided in 2004–at least four years after any of the cases cited by Defendant as constituting a current trend.[2] Furthermore, none of the cases cited by Defendant involved a forum selection agreement between an American Jones Act seaman and an American company. Thus, Defendant's argument is woefully unpersuasive.

Defendant next urges the Court to reconsider its *Boutte* holding in light of the holding in *Sawicki v. K/S Stavenger Prince*, a 2001 Louisiana Supreme Court case, in which said court noted that LSA-R.S. § 23:921(A)(2) is procedural in nature.[3] *See* LA. REV. STAT. ANN. § 23:921(A)(2) (2006); *Sawicki v. K/S Stavenger Prince*, 2001-C-0528 (La. 12/7/01); 802 So. 2d 598. Section 23:921(A)(2) is relevant because, under § 23:921(A)(2), choice of forum clauses in Louisiana employment contracts are unenforceable in Louisiana state courts. Therefore, it would appear that the state of Louisiana has a strong public policy against enforcing such clauses. Defendant reminds the Court that federal courts do not follow state procedural law, and that, under *Sawicki*, § 23:921(A)(2) is procedural. Regardless, the fact that such a law was enacted by the Louisiana legislature and that the Louisiana courts are refusing to enforce forum selection clauses lends to the

---

[2] Regardless of any supposed "trend," the Court's intention when it decided *Boutte*, and now, is to follow precedent set by the Fifth Circuit and the Supreme Court, which is thoroughly examined in the *Boutte* decision.

[3] *Boutte* was decided in 2004, and LSA-RS § 23:921(A)(2) was discussed. In fact, the Court cited *Sawicki*, which was decided in 2001, in *Boutte* because, in *Sawicki*, the Louisiana Supreme Court refused to enforce a forum selection clause signed by a seaman. *Boutte*, 346 F. Supp. 2d at 929.

conclusion that the enforcement of such clauses contravenes Louisiana public policy–even if the law is merely procedural. Furthermore, while the fact that Louisiana has a strong public policy against enforcing forum selection clauses weighed in this Court's analysis, it was by no means determinative.

The Court acknowledges Defendant's disagreement with *Boutte*, but Defendant has offered no persuasive argument or controlling authority to justify abandoning the *Boutte* holding. Therefore, the Court respectfully declines to dismiss this matter under Rule 12(b)3 based upon the forum selection clause in the employment agreement.

### III. Motion to Transfer Venue

*A. Legal Standard*

The federal venue transfer statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2000). The movant bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (requiring the movant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed."). In determining whether a venue transfer is warranted, the Court considers the availability and convenience of witnesses and parties; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the location of pertinent books and records; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum, which is generally entitled to great deference. *See, e.g., Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.

Supp. 1392, 1395–96 (S.D. Tex. 1992). The decision to transfer a case lies within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet*, 868 F.2d at 1436.

B. *Analysis*

    1. *Availability and Convenience of Witnesses.* "The availability and convenience of witnesses is arguably the most important of the factors" in the § 1404 analysis. *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) (citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3851, at 415 (1986)). To support a Motion to Transfer on this ground, the movant must identify key witnesses and provide a brief outline of their likely testimony. *See id.* (citing *Dupre*, 810 F. Supp. at 825). "The convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Id.*

    Defendant argues that a trial in the Eastern District of Louisiana would be more convenient because several key witnesses reside in Louisiana. First, Defendant asserts that nine of Plaintiff's healthcare providers reside in Louisiana, while only one healthcare provider resides in Texas. Defendant admits that it is highly unlikely that all nine of the Louisiana healthcare providers will testify, but notes that "it is likely some will testify." (Def.'s Mem. 8). While the Court acknowledges that such testimony may be "likely," the Court is loathe to transfer a case based on a likelihood. Rather, the Court requires a brief outline of testimony from witnesses discussed in a Motion to Transfer Venue in order to be convinced that such witnesses are indeed *key* witnesses. *See Dupre*, 810 F. Supp. at 825 ("The movant must specifically identify the key witnesses and outline the substance of their testimony."). Such an outline also serves the purpose of assuring the Court that the anticipated testimony of the listed witnesses is not redundant or cumulative. *See Continental Airlines*,

805 F. Supp. at 1397 ("[T]his Court vigorously exercises its authority under Fed. R. Evid. 403 and 611(a) to ensure that each witness' testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum.").

Defendant next claims that the testimony of the six crew members who were on board the NAN CENAC at the time of Plaintiff's alleged accident, in addition to testimony of two additional crew members Plaintiff worked with subsequent to the alleged accident, will be crucial to its case. Defendant asserts that most, if not all, of these witnesses will testify regarding (1) whether the NAN CENAC was in Texas waters on November 11, 2005; (2) whether the NAN CENAC had proper ingress or egress to or from the vessel; and (3) whether Plaintiff was injured while disembarking the NAN CENAC on November 11, 2005. Defendant suggests the testimony of these witnesses will not be cumulative because Plaintiff's credibility regarding the occurrence of an accident and the types of injuries sustained is at issue. While Defendant does not actually present a brief outline of the testimony of each witness, Defendant's allegations regarding the credibility of Plaintiff probably necessitate the testimony of at least some of the listed witnesses. However, at least seven of the listed witnesses are still in Defendant's employ. The convenience of key witnesses who are employees of defendants "is entitled to less weight because [defendants] will be able to compel their testimony at trial." *Continental Airlines*, 805 F. Supp. at 1397. Therefore, even though the Court is convinced that at least some of these witnesses may be key, it is reticent to give much weight to their convenience in the transfer of venue analysis. The Court now turns to whether transfer is warranted for the convenience of the parties.

Plaintiff is a resident of Houma, Louisiana, but he chose this forum and concedes that it is convenient for him. Defendant is a Louisiana corporation with its principal place of business in

Louisiana. Thus, Defendant will be more inconvenienced by a trial in the Southern District of Texas, Galveston Division, than in the Eastern District of Louisiana. Plaintiff argues that Defendant's convenience does not weigh strongly in favor of transfer because Defendant regularly does business within this district. The Court agrees.

*B. Cost of Obtaining the Attendance of Witnesses and Other Trial Expenses*

Parties to litigation face unavoidable costs in almost every case that goes to trial. *Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1108 (S.D. Tex. 1997). Furthermore, it is "rare that the forum in which the case is litigated is the most convenient for all the parties involved." *Id.* So, while the costs of obtaining the attendance of witnesses and other trial expenses is a factor in the transfer analysis, it is not a substantial factor.

Defendant argues that the costs associated with trying the case in Galveston far exceed the costs that would be incurred by both parties if the trial were held in the Eastern District of Louisiana. First, Defendant notes that both Plaintiff and Defendant will incur additional travel expenses. Next, Defendant claims its trial expert expenses will increase if the trial is in Texas because (1) if it retains experts in Louisiana, it will be required to pay travel expenses for the experts to attend the trial; and (2) if it retains experts in Texas, it will need to pay travel expenses for the Plaintiff to travel to these experts, and it will need to pay travel expenses for a marine safety expert to travel to Houma, Louisiana to inspect the NAN CENAC. While the Court sympathizes with the Defendant regarding these alleged increased expenses, the Court notes that Plaintiff has already retained two of his experts, both of whom reside in Texas. Therefore, Plaintiffs expenses will increase if it pays travel expenses for its experts to attend a trial in the Eastern District of Louisiana. Though Defendant asserts that Plaintiff may retain experts who reside in Louisiana, Plaintiff is already being treated by a physician

in Texas and will likely incur additional expenses to change physicians at this point. Furthermore, the Court is unconvinced that Defendant will incur additional expenses if it retains a marine safety expert in Texas as opposed to a marine safety expert in Louisiana. The NAN CENAC's home port is Houma, Louisiana, but the NAN CENAC is a vessel that was arguably in Texas waters at least once. Defendant has not conveyed to the Court that the NAN CENAC is no longer in commission nor that it has ceased operations in this district. The NAN CENAC could be inspected by a Texas marine safety expert while she is in use in Texas waters if Defendant desires to save the travel expenses for said expert.

Finally, Defendant argues that more witnesses reside in Louisiana than in Texas, and that the travel costs associated with bringing these witnesses to the Southern District of Texas to testify will greatly outweigh the costs associated with bringing the two experts retained by Plaintiff that reside in Texas to Louisiana. The Court agrees that most of the witnesses, as well as Plaintiff and Defendant, reside in Louisiana and that travel expenses will thus be greater if the trial is held within this district. Therefore, this factor weighs in favor of transfer. However, as noted above, this factor is not given much weight.

## C. *Location of Books and Records*

The location of books and records is generally of little importance in personal injury cases. Defendant claims that any books and records which may be relevant to this litigation are located in Louisiana, including medical records, employment records, and vessel documentation. Plaintiff argues that most of these documents will be produced in discovery and that no inconvenience will result from their being sent to Galveston. Defendant has not given the Court any indication that the records located in Louisiana are so voluminous as to cause Defendant to incur substantial cost in

9

transporting them to this Court. *See LeBouef*, 20 F. Supp. 2d at 1060 ("The Court finds little inconvenience inherent in bringing, if necessary, those records to Galveston [from Louisiana]."). Therefore, this factor does not weigh for or against transfer.

D. *Plaintiff's Choice of Forum*

Plaintiff's decision to litigate this case in Texas is entitled to great deference. *See Barnett v. Kirby Inland Marine, Inc.*, 202 F. Supp. 2d 664, 670 (S.D. Tex. 2002). Plaintiff's choice of forum is entitled to less deference if Plaintiff does not reside in the forum. *See, e.g.*, *Robertson* 979 F. Supp. at 1109 (finding that a Mississippi plaintiff's choice of the Southern District of Texas was entitled to little or no deference where the case had no connection to the forum). Plaintiff is a resident of Houma, Louisiana. Although Plaintiff does not reside in this district, his choice still requires some deference unless the case has absolutely no connection to this forum. *See Robertson*, 979 F. Supp. at 1109. Because the case does have a connection to this forum, as discussed below, this factor weighs against transfer.

E. *Place of the Alleged Wrong*

The place of the alleged wrong is an important factor in venue determinations. *See Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 732 (S.D. Tex. 2002). Defendant urges the Court to disregard this factor because Defendant disputes that the NAN CENAC was in Texas waters at the time of the alleged accident. Defendant bases its dispute on the fact that the NAN CENAC's vessel logs indicate she was docked in Houma, Louisiana on November 11, 2005. However, Plaintiff does not claim the accident occurred exactly on November 11, 2005; rather, he states it occurred "on or about November 11, 2005." (Pl.'s Original Compl. 3). Therefore, Defendant's evidence is unconvincing.

Defendant also claims that, even if Plaintiff was injured in Texas waters, "the location of the alleged wrong is merely a fortuitous circumstance." (Def.'s Mem. 15). Plaintiff argues, on the other hand, that Defendant frequently calls on Texas ports. The people of Texas have an interest in seeing disputes involving companies that engage in substantial business off of the coast of Texas resolved. This Court is aware of at least two other instances in which Defendant was a party to litigation in this Court. *See Boutte*, 346 F. Supp. 2d at 944 (noting that the alleged wrong occurred in this District); *Ducote v. Cenac Towing Co., Inc.*, No. G-06-211, 2006 WL 2022900, at *4 (S.D. Tex. July 13, 2006) ("The alleged wrong took place on the DUSTIN when it was located in Pelican Cut in Galveston, Texas."). This serves as evidence that Defendant has a substantial connection with this District and negates the allegation that the alleged location of the NAN CENAC on the date of the alleged accident was merely fortuitous. Therefore, the Court considers the alleged location of the alleged wrong in its analysis and finds that this factor weighs slightly in favor of retention.

*F. Potential for Delay*

Any transfer will produce some delay, and Plaintiff must show that a transfer at this stage would cause a significant or unusual delay in order for this factor to be relevant. *See In Re: Horseshoe Entertainment*, 337 F.3d 429 (5th Cir. 2002) ("[I]n rare and special circumstances a factor of delay or prejudice might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence."). Plaintiff argues that the trial is set for May 21, 2007 and that it will lose "'the benefit of this Court's expeditious and cost efficient manner of handling cases'" if the case is transferred to the Eastern District of Louisiana. (Pl.'s Resp. in Opp'n to Def.'s Mot. Transfer Venue 9 (quoting *Richoux v. R&G Shrimp Co.*, 126 F. Supp. 2d 1007, 1011 (S.D. Tex. 2000))). While the Court is flattered that Plaintiff finds its handling of cases

11

expeditious and cost efficient, the trial is not set until May, 21, 2007. This date is still many months away, and Plaintiff does not give the Court any reason to believe there will be a significant or unusual delay if the case is transferred to the Eastern District of Louisiana. Therefore, this factor is irrelevant.

After carefully considering each factor, the Court concludes that Defendants have failed to carry their burden of demonstrating that the case should be transferred to the Eastern District of Louisiana. While the parties and several witnesses reside in Louisiana, the Southern District of Texas has an interest in this matter since Defendant regularly conducts business within this District, the wrong allegedly occurred in this District, and Plaintiff has chosen this forum. Furthermore, Defendant has not provided the Court with enough information regarding the witnesses who will be inconvenienced by having the trial in Galveston to convince the Court that this is an inconvenient forum. Therefore, though the scales are fairly even, the Court finds that the factors weigh slightly in favor of retention.

### IV. Conclusions

For the reasons stated above, Defendant's Motion to Transfer Venue and Alternate Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3) are **DENIED**. Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 19th day of October, 2006, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge